Case 2:25-mj-00754   Document 1   Filed on 12/06/25 in TXSD   Page 1 of 5

United States Courts
Southern District of Texas
FILED
12/06/2025
Nathan Ochsner, Clerk of Court

AO 91 (Rev. 11/11)   Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Texas

| | |
|---|---|
| United States of America <br> v. <br> VAZQUEZ-Ponce, Javier Sebastian <br> *Defendant(s)* | Case No. 2:25-MJ-754 |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of **December 2 to December 4, 2025** in the county of **Jim Wells** in the **Southern** District of **Texas**, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. Section 932 | To conspire to purchase, any firearm in or otherwise affecting interstate or foreign commerce for, on behalf of, or at the request or demand of any other person, knowing or having reasonable cause to believe that such person intends to use the firearm in furtherance of a felony. |
| 18 U.S.C. Section 933 | To conspire to transport any firearm to another person in or otherwise affecting interstate or foreign commerce, if such person has reasonable cause to believe that the use of the firearm by the recipient would constitute a felony |

This criminal complaint is based on these facts:

See attached Affidavit.

☑ Continued on the attached sheet.

*Complainant's signature*

Michael E. Dail, Special Agent, ATF
*Printed name and title*

Submitted by reliable electronic means, sworn to, signature attested telephonically per Fed. R. Crim. P.4.1 and probable cause found this 6th day of December, 2025.

Date: 12/06/2025

*Judge's signature*

City and state: Corpus Christi, Texas

Jason B. Libby, United States Magistrate Judge
*Printed name and title*

# AFFIDAVIT

I, Michael E. Dail, being first duly sworn, hereby depose and state as follows:

1. I am a Special Agent (SA) with the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF), a Division of the United States Justice Department, assigned to the Corpus Christi Field Office and have been so employed since October 27, 2019. As a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives, I have graduated from the Federal Law Enforcement Training Center and the ATF National Academy. I am vested with the authority to investigate violations of Federal laws, including Titles 18, 22, and 26, United States Code.

2. I am familiar with certain Federal criminal laws and know that it is a violation Title 18 U.S.C. § 933: for any person to ship, transport, transfer, cause to be transported, or otherwise dispose of any firearm to another person in or otherwise affecting interstate or foreign commerce, if such person knows or has reasonable cause to believe that the use, carrying, or possession of a firearm by the recipient would constitute a felony.

3. I also know that it is a violation of Title 18 U.S.C. § 932: for any person to knowingly purchase, or conspire to purchase, any firearm in or otherwise affecting interstate or foreign commerce for, on behalf of, or at the request or demand of any other person, knowing or having reasonable cause to believe that such other person intends to use, carry, possess, or sell or otherwise dispose of the firearm in furtherance of a felony, a Federal crime of terrorism, or a drug trafficking crime.

4. Additionally, I know that it is a felony violation under Title 18 U.S.C. § 554: for any person to fraudulently or knowingly exports or sends from the United States, or attempts to export or send from the United States, any merchandise, article, or object contrary to any law or regulation of the United States, or receives, conceals, buys, sells, or in any manner facilitates the transportation, concealment, or sale of such merchandise, article or object, prior to exportation, knowing the same to be intended for exportation contrary to any law or regulation of the United States.

5. Further I know the Arms Export Control Act (AECA), 22 U.S.C. § 2778, regulates the exportation of "defense articles," including firearms and firearm parts. The articles subject to AECA control are listed under various categories in the State Department's U.S. Munitions List contained in the regulations in 22 CFR 121.1. Firearms and component parts of firearms are listed under Categories I and II. Category I covers nonautomatic and semi-automatic firearms to include .50 caliber (12.7 mm), as well as fully automatic firearms to .50 caliber inclusive. This category also covers silencers, mufflers, sound and flash suppressors, and rifle scopes manufactured to military specifications.

6. This affidavit is in support of a criminal complaint charging Javier Sebastian VAZQUEZ-Ponce, hereinafter referred to as "SEBASTIAN" with the criminal violation set forth in this affidavit. The evidence available to me demonstrates there is probable cause to believe SEBASTIAN has violated Title 18 USC § 932 and 933.

7. On December 2, 2025, at approximately 3:15 pm, ATF Corpus Christi Field Office (CCFO) was notified by ATF Industry Operations Investigator (IOI) Garza that a Federal Firearms Licensee (FFL), or firearms dealer, located in Orange Grove, Texas, had a suspicious purchase of a .50 caliber rifle. On that day, the FFL received a phone call from PERSON 1 who was asking if the FFL had a .50 caliber rifle for sale. The FFL stated he did have one. Person 1 set his appointment and came to the FFL.

8. Person 1 arrived at the FFL with SEBASTIAN and Person 2, who is the brother of SEBASTIAN. Person 1 requested a semi-automatic .50 caliber rifle. The FFL had two .50 caliber rifles in stock, but both were bolt-action firearms. Person 1 stated that he wanted a semi-automatic. Person 1 ordered a semi-automatic rifle, a magazine and ammunition. (Person 1 received 24 rounds of .50 caliber ammunition). Your affiant knows that .50 caliber semi-automatic rifles are considered weapons of choice for Drug Trafficking Organizations in Mexico.

9. While discussing price with the FFL, Person 1 looked at and nodded to SEBASTIAN to confirm the $10,400 dollar purchase amount. SEBASTIAN nodded back to Person 1 as though he was approving it. Person 1 then asked the FFL if he can go to the car to get the money. SEBASTIAN and Person 2 went to the car and SEBASTIAN brought in cash to pay for the firearm while Person 1 waited in the store. The FFL counted the cash and stated that they were $20 dollars short. SEBASTIAN pulled a $20 dollar bill from his wallet and added it to the money. The purchase order was completed, and the firearm was ordered.

10. On December 3, 2025, ATF learned that Person 1, SEBASTIAN, and Person 2 were all legal permanent residents in the United States who live in the McAllen, Texas. It was also learned that SEBASTIAN and Person 2 regularly cross into and return from Mexico, exceeding 500 border crossings. On the evening of December 2, 2025, after ordering the .50 caliber rifle, the vehicle Person 1, SEBASTIAN, and Person 2 drove to Orange Grove, Texas entered Mexico.

11. SEBASTION, Person 1, and Person 2 returned to the FFL on December 4, 2025, to pick up the purchased firearm. ATF had agents waiting outside the FFL. Person 1 completed the ATF Form 4473, titled Firearm Transaction Record. After completing the form, the FFL submitted Person 1 for a background check. While waiting on the background check to return, Person 1 told the FFL that he was purchasing the firearm to use on a ranch, that he does oilfield work, and he was going to take customers to shoot it.

12. There was a delay of nearly 4 hours for the approval to return from the National Instant Criminal Background Check System (NICS). During that wait, SEBASTIAN, Person 1, and Person 2 left the FFL, at about 2:00 pm. The return came in and Person 1 was called by the FFL to come back because the background check was approved. Person 1, SEBASTIAN, and Person 2 returned to the FFL at approximately 5:51 pm. The firearm was put into its case and was carried out of the business in it case by SEBASTIAN.

13. At approximately 6:12 pm, ATF CCFO approached Person 1, SEBASTIAN, and Person 2. SEBASTIAN set the firearm and ammunition down at the rear of the truck they arrived. Person 1, SEBASTIAN, and Person 2 were separated. Each individual was asked if they were willing to speak.

14. Person 1 agreed to speak with your affiant. Person 1 was reluctant at first reciting the same story Person 1 told the FFL inside. Person 1 then changed his story and stated that his cousin, SEBASTIAN, was the one that asked him to purchase the firearm. Person 1 also stated that SEBASTIAN paid Person 1 $1,000 dollars to make the purchase. SEBASTIAN sent the money to Person 1. Person 1 was struggling with his oilfield job being very slow and SEBASTIAN was able to help him with the money. Person 1 believed that SEBASTIAN was taking the firearm to Mexico. Person 1 had heard SEBASTIAN talking with other people and had seen SEBASTIAN texting other people about the firearm Person 1 purchased. Person 1 stated the money to purchase was provided by SEBASTIAN. Person 1 said he believed the firearm was ultimately going to a cartel in Mexico.

15. Person 1 agreed to a consent search of his phone. Person 1 showed text messages from a Mexico telephone number. Person 1 stated that the number was one of two phone numbers SEBASTIAN had. Person 1 then showed messages from a US based phone number, which was also SEBASTIAN's. SEBASTIAN had two phones on his person when encountered.

16. Your affiant and other SAs reviewed the phone messages sent to Person 1. The phone messages corroborated the account of Person 1. The messages stated he would be paid $1,000 dollars for signing the paperwork. The messages asked about updates regarding the firearm, and spoke of other purchases, like going to Houston, Texas, to get a M249, which is a specific belt-fed firearm. The US phone number had messages that showed SEBASTIAN sent Person 1 money via Zelle to Person 1's wife's bank account. SEBASTIAN had also asked Person 1 to ask about specific firearms magazines for a M249 rifle.

17. Your affiant had Person 1 call each number in Person 1's phone identified as belonging to SEBASTIAN. Each of the phones that recovered from SEBASTIAN rang. The Samsung phone rang when the Mexico phone number was called, and the iPhone rang when the US phone number was called.

18. Person 2 was interviewed and eventually admitted that SEBASTIAN received about $1,000 dollars from an individual in Mexico to purchase the firearm. Person 2 stated he

believed the firearm was going to Mexico and based on nicknames spoken to him by SEBASTIAN, Person 2 believed the person paying SEBASTIAN was in the cartel.

19. Your affiant and another agent approached SEBASTIAN who continued to state Person 1 was buying the firearm. SEBASTIAN was read his Miranda Rights before asking agents continued asking questions. SEBASTIAN was confronted with the text messages and the fact that his phones rang when the numbers from the messages were called. SEBASTIAN eventually admitted that he asked Person 1 to purchase the firearm and paid Person 1. SEBASTIAN received the cash in Mexico from an individual known to SEBASTIAN as a member of the Gulf Cartel and SEBASTIAN crossed the money into the United States. SEBASTIAN was supposed to take the firearm to a place in Pharr, Texas. SEBASTIAN was not the person who was supposed to cross the firearm into Mexico.

20. The recovered firearm was identified as a Barrett, Model M82A1, .50 BMG Caliber, Rifle, SN: A020495. With the firearm were twenty-four (24) rounds of .50 BMG ammunition.

21. Your affiant, who has been trained in the identification and origin of firearms and ammunition, knows that the above firearm was made outside the state of Texas and that the firearm was made after 1898, and thus affected interstate commerce. The ammunition was also made outside the state of Texas after 1898 thereby affecting interstate commerce.

22. Based on the above information, your affiant believes Javier Sebastian VAZQUEZ-Ponce did conspire to purchase a firearm and did attempt to cause a firearm to be trafficked to Mexico, in violation of Title 18 United States Code § 932 and 933; to wit, VAZQUEZ-Ponce paid another person, Person 1, to purchase a firearm, and intended to take that firearm to Mexico, when they were interdicted following the purchase on December 4, 2025, in Jim Wells County, Texas.

Further the Affiant sayeth not.

_____
Michael E. Dail, ATF Special Agent

Submitted by reliable electronic means, sworn to, signature attested telephonically per Fed. R. Crim. P.4.1 and probable cause found this 6th day of December 2025.

_____
Jason B. Libby
United States Magistrate Judge